Estate of Elgin S. Freeman, Marie L. Freeman, Administratrix, and Estate of Zila M. Freeman, Marie L. Freeman, Administratrix v. Commissioner.
Estate of Freeman v. Commissioner
Docket No. 92149.
United States Tax Court
T.C. Memo 1964-306; 1964 Tax Ct. Memo LEXIS 34; 23 T.C.M. (CCH) 1893; T.C.M. (RIA) 64306; November 20, 1964
Daniel R. McCarthy, for the petitioners. Eugene S. Linett, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of petitioners' decedents for the years 1955, 1956, and 1957 in the respective amounts of $136,050.64, $6,728.96, and $5,462.49. Other issues herein having been settled by agreement of the parties, the sole question remaining for decision is whether the redemption by the Hotel Rieger Company in 1955 of 360 shares of its stock owned by Zila M. Freeman was essentially equivalent to a dividend within the purview of section 302(b)(1) of the Internal Revenue Code of 1954. *35 Findings of Fact Most of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. At all times material to this proceeding Elgin S. and Zila M. Freeman (hereinafter sometimes referred to as the Freemans) were husband and wife residing in Cleveland, Ohio. Their joint Federal income tax returns for the calendar years 1955, 1956, and 1957, made on the cash basis, were filed with the district director of internal revenue at Cleveland, Ohio. During the years here in issue and for some time prior thereto the Freemans were engaged primarily in the ownership and operation, as partners, of various rooming houses and small hotels. In December of 1954 they purchased, for a price of $326,625, all of the stock of the Hotel Rieger Company, an Ohio corporation located at Sandusky, Ohio (sometimes hereinafter referred to as the corporation), consisting of 750 common shares. All of these shares were acquired in the name of Zila M. Freeman. The Freemans made a partial payment of $5,000 cash from their own funds and borrowed the remainder of the purchase price, or $321,652, from the Cleveland Trust Company under *36 an agreement dated December 24, 1954. Pursuant to this agreement, which is more fully detailed in the stipulation of facts, the Freemans agreed to repay the Cleveland Trust Company approximately $168,500 of the $321,652 six months from date and the balance over a longer period of time. At the time they purchased the stock of the Hotel Rieger Company, the Freemans intended to liquidate the corporation, manage its principal asset - a resort hotel located on Lake Erie - as partners, and renegotiate the $168,500 short term loan owed the Cleveland Trust Company with a long-term note secured by a mortgage on the hotel property. However, sometime subsequent to the purchase, the Freemans found that it was impossible to have the hotel's liquor license transferred from the corporation to themselves individually because of an earlier conviction of Elgin Freeman for having feloniously operated an illicit still. Since maintenance of the hotel's liquor license was a condition precedent to the Cleveland Trust Company's loan, and since the license would be lost if the hotel were transferred to them as individuals, the Freemans decided to continue to operate the Hotel Rieger in the corporate form. *37 This decision, however, made it necessary for the Freemans to find some other way of satisfying their $168,500 short term indebtedness to the Cleveland Trust Company, due July 15, 1955. Therefore, sometime prior to May 27, 1955, Zila Freeman proposed to the Hotel Rieger Company that it redeem from her 360 of the 750 shares of its stock held by her for a price of $168,500 and on May 27, 1955, this proposal was accepted by the corporation. Thereafter, on May 30, 1955, Zila Freeman assigned 360 shares of her Hotel Rieger Company stock to the corporation, appointing the Cleveland Trust Company as attorney to transfer the shares on the corporate books. On August 12, 1955, the corporation borrowed the sum of $168,500 from various banks and with this money paid the $168,500 short term indebtedness of the Freemans to the Cleveland Trust Company. At all times here material the Hotel Rieger Company had accumulated earnings and profits in the amount of $152,748.31. Immediately after the consummation of the abovedescribed transactions the stock of the Hotel Rieger Company consisted of 390 outstanding common shares owned by Zila Freeman and 360 common shares held as treasury stock. Opinion
*38 The single issue involved in this proceeding is whether or not the redemption by the Hotel Rieger Company of 360 shares of its stock from Zila Freeman, its sole shareholder, accompanied by a corporate payment of $168,500 in satisfaction of an indebtedness owed by Zila Freeman to a third party was the essential equivalent of the distribution to her of a taxable dividend. Petitioners contend that it was not, relying on such cases as Fox v. Harrison, 145 F. 2d 521 (C.A. 7, 1944); Erickson v. United States, 189 F. Supp. 521 (S.D.Ill., 1960); Hargleroad v. United States, 202 F. Supp. 92 (D. Neb., 1962), and S. K. Ames, Inc., 46 B.T.A. 1020 (1942). In our view petitioners' reliance upon these cases in no way enhances their position herein. Basic to each of them is the fact that the stock redeemed had been acquired by the redeemed shareholder (the taxpayer) from a retiring shareholder on behalf of the corporation in pursuance and furtherance of a corporate plan of redemption thus, the redeemed shareholder (the taxpayer) was held to be an agent of the corporation for purposes of the transaction, which was "in reality" a redemption of the *39 retiring shareholder's stock, "with taxpayer acting as a temporary repository therefor until the total transaction could be consummated by the corporation's retirement of the shares." Erickson v. United States, supra, at 525. In the instant case there is no evidence that Zila Freeman was either acting as an agent of the Hotel Rieger Company in acquiring its stock, or that the transaction by which a part of such stock was redeemed was in pursuance of any corporate plan of redemption. Indeed, so distinguishable is the rationale upon which petitioners' authorities are based, it is difficult for us to see why such authorities have been urged in the instant case at all. Whether or not a distribution in redemption of stock is essentially equivalent to a dividend is primarily a question of fact. After viewing all the facts we are convinced that this distribution did have the effect of a dividend. It was, like a dividend, pro rata and resulted in no change in the proportionate ownership of the corporation's stock. It came, to the extent of $152,748.31, from the corporation's accumulated surplus. Its single purpose was to allow the corporation's sole shareholder, Zila Freeman, *40 to satisfy an indebtedness which she owed to the Cleveland Trust Company by means of a direct payment by the corporation to the Trust Company. Cf. Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3, 1957). As the Court of Appeals for the Fourth Circuit observed in Wall v. United States, 164 F. 2d 462, 464 (C.A. 4, 1947): It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer. * * * [citing authorities]. The transaction is regarded as the same as if the money had been paid to the taxpayer and transmitted by him to the creditor; and so if a corporation, instead of paying a dividend to a stockholder, pays a debt for him out of its surplus, it is the same for tax purposes as if the corporation pays a dividend to a stockholder, and the stockholder then utilizes it to pay his debt. Accordingly, we sustain respondent's determination on this issue. To reflect the adjustments agreed to by the parties, Decision will be entered under Rule 50.